**UNITED STATES of America**

v.

**C. Leon HARVEY.**

CR. 3-86-83.

United States District Court, E.D. Tennessee N.D.

Feb. 27, 1987.

---

112

Laurens Fullock, Asst. U.S. Atty., for U.S.

Herbert S. Moncier, Knoxville, Tenn., for defendant.

ORDER

HULL, Chief Judge.

The above-styled criminal action was referred to United States Magistrate Robert P. Murrian pursuant to 28 U.S.C. § 636(b) and a standing order of this Court for a report and recommendation regarding disposition by the Court of the defendant's motion to dismiss the superseding indictment on the ground that the two declarations of Mr. Harvey which form the basis of this perjury prosecution are not material declarations. An evidentiary hearing was conducted before the magistrate on December 17 and 22, 1986, and oral arguments were heard on February 6, 1987. This matter is currently before the Court on the magistrate's report and recommendation which recommends that the superseding indictment be dismissed with prejudice.

It should first be noted that the government has not filed any objections to the magistrate's report and recommendation and has informed the Court that it does not intend to pursue the matter further.

After reviewing the record in this case, the Court finds that the magistrate's report and recommendation is well reasoned and fully supported by the record. Thus, the report and recommendation of the United States magistrate is hereby adopted and approved.

Accordingly, for the reasons set out in the magistrate's report and recommendation, it is ORDERED that the defendant's motion to dismiss the superseding indictment is hereby GRANTED and that the superseding indictment is hereby DISMISSED WITH PREJUDICE.

REPORT AND RECOMMENDATION

Feb. 17, 1987

ROBERT P. MURRIAN, United States Magistrate.

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and a

Standing Order of this Court for a report and recommendation regarding disposition by the Court of the defendant's motion to dismiss the superseding indictment on the ground that the two declarations of Mr. Harvey which form the basis of this perjury prosecution are not material declarations. An evidentiary hearing was conducted on December 17 and 22, 1986, and oral arguments were heard on Friday, February 6, 1987.

The superseding indictment charges Mr. Harvey with giving certain testimony under oath during a discovery deposition which was taken on October 13, 1983, in the case of *Harvey d/b/a Harvey Motor Co. v. Chrysler Credit Corporation,* Civ. No. 3–83–452. The superseding indictment charges that he gave inconsistent testimony to that given in the deposition in other testimony given from the witness stand during a civil trial held before the Honorable James H. Jarvis on July 3, 1985. *Chrysler Credit Corporation v. W.N. Harvey,* Civ. No. 3–85–187.

It is the theory of the government's case that the answers given on these separate occasions are so totally inconsistent that one of them is necessarily false and, hence, Mr. Harvey is guilty of perjury. The statute in question provides in pertinent part as follows:

\* \* \* \* \* \*

(a) Whoever under oath ... in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

\* \* \* \* \* \*

(c) An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if—

(1) each declaration was material to the point in question, and

(2) each declaration was made within the period of the statute of limitations for the offense charged under this section.

In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to the first sentence of this subsection that the defendant at the time he made each declaration believed the declaration was true.

\* \* \* \* \* \*

18 U.S.C. § 1623.

As can be seen from the words of the statute, each declaration must have been "material to the point in question." That frames the precise issue for determination of this motion, *i.e.,* were both declarations set out in the superseding indictment "material to the point in question" when made? Since I am of the opinion that the declaration made in the 1983 civil deposition was not material to the point in question, I shall pretermit consideration of the declaration made during the 1985 civil trial.

Materiality is a question of law for the Court. *See United States v. Abadi,* 706 F.2d 178, 180 (6th Cir.), *cert. denied,* 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983); *United States v. Giacalone,* 587 F.2d 5, 7 (6th Cir.1978), *cert. denied,* 442 U.S. 940, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). Thus, it is rather a waste of time to be concerned with where the burden of proof lies with regard to proving materiality. After the appropriate underlying facts are developed, it is for the Court to answer "yes, the declaration was material" or "no, it was not." *United States v. Watson,* 623 F.2d 1198, 1202 (7th Cir.1980).

■ In a prosecution such as this one, the government is relieved of proving that a particular statement is false if it can show that two or more statements (1) were

made before or ancillary to a federal court or grand jury proceeding, (2) were made under oath, (3) were made knowingly, (4) are inconsistent to the degree that one statement is necessarily false, (5) were material to the point in question, and (6) are not time barred. A prosecution like this one could be analogized to the tort concept of *res ipsa loquitur.* "The thing speaks for itself" in that one of the statements necessarily is false.

The question of what "material to the point in question" means in Section 1623 is uncertain as the law stands now. But, even if I adopt the government's position of what that phrase means, the declarations made during the 1983 civil deposition were not material. The government took its test of materiality from *United States v. Naddeo,* 336 F.Supp. 238 (N.D.Ohio 1972) (a prosecution under 18 U.S.C. § 1621) and stated it as follows:

(1) What was the matter under inquiry?

(2) Was the matter under inquiry a proper matter (even if collateral)?

(3) Did the testimony have the tendency to impede, influence, or dissuade the examiner from his investigation?

Government's Reply Brief, p. 6.

■ In my opinion, the answer to the first two questions does not call for dismissal of the superseding indictment but the answer to the third is "no" and calls for such a dismissal.

The matter under inquiry during the 1983 civil deposition was whether or not Harvey Motor Company consisted of a partnership between W.N. Harvey (defendant's father) and the defendant. Ex. 3 and Ex. 4. It was a proper matter for inquiry because the questions dealt with the right of defendant to sue on behalf of Harvey Motor Company. It may have been a "collateral" matter, but the line of inquiry was nonetheless proper. There may well have been some confusion in the examiner's mind regarding whether Harvey Motor Company was a proprietorship or a partnership. Tr. 29.

Defendant answered the questions to the effect that he and his father operated Harvey Motor Company as a partnership and had done so since 1947.

The 1983 lawsuit had been filed July 22, 1983. Ex. 1. The plaintiff was "Leon Harvey, d/b/a Harvey Motor Company," and the defendant was Chrysler Credit Corporation (Chrysler Credit). Plaintiff described himself as a franchise dealer for the Chrysler Corporation since 1947. The complaint stated that plaintiff and defendant Chrysler Credit had a contract whereby a floor-plan line of credit was extended to plaintiff. The complaint claimed that defendant had made unfair representations about plaintiff which caused certain banks to cancel plaintiff's line of credit and that defendant had maliciously cancelled plaintiff's line of credit with defendant. The complaint alleged that defendant's conduct had forced plaintiff into bankruptcy. Finally, the complaint alleged that defendant had "breached a covenant of good faith inherent with the contract that [Mr. Harvey] had with [Chrysler Credit]," and that Mr. Harvey was entitled to $7.5 million in damages.

Chrysler Credit answered and counterclaimed against "Leon Harvey d/b/a Harvey Motor Company." Ex. 2. It admitted that it had extended a floor plan line of credit to "Leon Harvey d/b/a Harvey Motor Company" in its answer. The counterclaim was to enforce a note dated April 1, 1980, which was signed "C.L. Harvey and W.N. Harvey DBA Harvey Motor Company by /s/ C.L. Harvey." The answer and counterclaim raised no question whatsoever about plaintiff's right to bring the suit. In fact, since Chrysler Credit admitted that a floor-plan contract existed between "Leon Harvey d/b/a Harvey Motor Company" and Chrysler Credit, the defendant and his counsel, J.D. Lee, Esq., had no way of knowing that Leon Harvey's right to bring the suit was a "point in issue." In fact, by admitting that it had a floor plan contract with "Leon Harvey d/b/a Harvey Motor Company," Chrysler Credit had made the question of plaintiff's right to bring the lawsuit a "non-issue" at the time of the October 13, 1983, deposition.

The lawyer who was examining the defendant at that time, R. Thomas Stinnett, Esq., explored the question of whether or not Harvey Motor Company was a partnership at the outset of the deposition. After being told that Harvey Motor Company was a partnership, he made the tactical decision not to raise any issue in the pleadings or otherwise about the right of "Leon Harvey d/b/a Harvey Motor Company" to sue his client. Tr. 113–114.[1] The lawsuit was dismissed without prejudice on November 30, 1983, at the request of the plaintiff. At no time from the lawsuit's inception until its dismissal was any question raised by Chrysler Credit in the pleadings or by other notice about "Leon Harvey d/b/a Harvey Motor Company's" right to prosecute that suit. Tr. 215–218.

Mr. Stinnett did not raise the question at the deposition. He simply asked some questions, got some answers, and went right on. He never questioned plaintiff's right to sue. As indicated earlier, he made the tactical decision (unknown to defendant of course) not to raise the issue.

Defendant was represented by Mr. Lee at the deposition. Mr. Lee testified at the hearing before me and said that he has known Mr. Harvey for more than 40 years. Lee said that he knew at the time of the deposition that Harvey Motor Company was a partnership until about 1978 when defendant became the sole owner after his father semi-retired. Tr. 207–208. He was present at the deposition and heard Mr. Harvey's testimony. Mr. Lee testified that defendant's statements that Harvey Motor Company was a partnership "probably rolled off me at the time as essentially talking about before 1978." Tr. 221. He said that if that issue had had anything to do with the lawsuit, he would have straightened the matter out. Tr. 221–223.

The government argues in its brief that Mr. Stinnett's *questioning* was influenced by defendant's answers since Stinnett asked follow-up questions about W.N. Harvey's role in the business. That may be true, but under the test urged on this Court by the government, influencing the examiner's questioning is not the criteria; rather, the question is "whether or not the false testimony had the material effect or tendency to impede, influence or dissuade the examiner from pursuing *his investigation. Naddeo,* 336 F.Supp. at 239 (emphasis added).

As set out previously, the question of whether Harvey Motor Company was a proprietorship owned by the defendant or a partnership owned by the defendant and his father was at all times, from beginning to end, a non-issue in the 1983 litigation. It may have been a potential issue stored somewhere in the mind of Mr. Stinnett when he was questioning the defendant, but that did not render the questions asked and the declarations made by defendant "material to the point in question" for purposes of Section 1623.

The answers Mr. Stinnett obtained in no way impeded, influenced or dissuaded his investigation of the case. When Mr. Harvey testified that Harvey Motor Company was a partnership, it just confirmed what Mr. Stinnett believed all along. Tr. 31, 37, 111. Mr. Stinnett treated the 1983 case as a partnership case. Tr. 36. For tactical reasons, Mr. Stinnett did not want to raise a question about Mr. Harvey's right to sue. Tr. 113–114. If Mr. Harvey had testified to the effect that Harvey Motor Company was something other than a partnership, it is entirely speculative what would have happened. In any event, the proof is uncontradicted that Mr. Stinnett did not want to raise any question about the defendant's right to sue in the 1983 litigation because he felt that strategy was in the best interest of his client.

The immateriality of the declarations is certainly borne out by the fact that the defendant's attorney heard the testimony and knew full well that the company was essentially a proprietorship since 1978 yet made no effort to correct any possible confusion or misunderstanding on his client's part.

It is not difficult to see why the matter was a "non-issue" in the 1983 litigation.

---

**1.** References are to the transcript of the evidentiary hearing.

The floor plan contract between Chrysler Credit and Harvey Motor Company dated May 15, 1973, was signed as follows: "C.L. Harvey and W.N. Harvey *ind.* and as Co-Partners dba Harvey Motor Company, by /s/ Leon Harvey" (emphasis added). Obviously "ind." stands for "individually." Therefore, Chrysler Credit had a contract with defendant and his father individually, as well as with them as partners.

Although authority on the point is scant, it would appear to me that Congress put the words "material to the point in question" in Section 1623 to guard against criminal convictions under factual situations similar to the one present here. Mr. Harvey had caused the suit to be filed in his own name as a proprietorship. He swore under oath that it was a partnership. At that point in time nobody had raised any question in the pleadings or otherwise that defendant's right to sue in the 1983 litigation was in any way a "point in question" and nobody raised that question before the case was dismissed.

■ The legislative history of Section 1623 which is reprinted in 1970 United States Code Congressional and Administrative News, 4007, *et seq.*, sheds some light on the problem. It makes clear the requirement that each declaration upon which the prosecution is based must have been "material to a point in question in the proceeding in which it was made...." *Id.,* 4023. It also makes clear that subsection (c) relates solely to the establishment of falsity. Knowledge, falsity and materiality must all be proved whether the prosecution is based on a single false statement or two or more logically inconsistent statements. *Id.*

■ From this it would appear that subsection (c)(1) puts a materiality question within the question of whether a false statement was made at all. And so, "overall materiality" for purposes of any prosecution under Section 1623 is different than the materiality requirement set forth in subsection (c)(1).

It would seem reasonable to me to conclude that subsection (c)(1) has the "material-to-the-point-in-question" requirement in order to ensure that no one will be convicted for making logically inconsistent declarations unless those declarations had sufficient importance to the proceedings in which they were made to warrant holding the declarant accountable under the criminal laws of the United States. It would appear to be logical that Congress would add this "extra" materiality requirement within subsection (c) to offset somewhat the fact that the government need not allege and prove which of the inconsistent statements was false. With the addition of this "material-to-the-point-in-question" requirement, the statute ensures that no one is, in effect, "sandbagged" by virtue of a declaration which pertained to a matter of little significance in the context of a judicial proceeding.

Mr. Stinnett was certainly justified in using the declarations to attempt to impeach the defendant during the 1985 trial. But, use of a prior inconsistent statement to impeach whereby the declarant is given an opportunity to explain the inconsistency if he can is quite different from using a prior inconsistent statement as an element of a perjury prosecution. By adding this "extra" materiality requirement, Congress gave the federal courts the authority to decide in Section 1623(c) prosecutions whether, as a matter of law, the logically inconsistent declarations had sufficient importance to the proceeding in question to warrant prosecutions under the criminal laws of the United States.

In my judgment, this "material-to-the-point-in-question" requirement does not exist with respect to the 1983 declarations and therefore the superseding indictment should be DISMISSED WITH PREJUDICE.[2]

2. Any objections to this Report and Recommen-

dation must be filed with the Clerk of Court

within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).