**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas G. FLOWERS, Jr.,
Defendant-Appellant.**

No. 86–5567.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 11, 1986.

Decided March 19, 1987.

Marvin David Miller, Alexandria, Va., on brief for defendant-appellant.

William G. Otis, Asst. U.S. Atty. (Henry E. Hudson, Arlington, Va., U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and BUTZNER, Senior Circuit Judge.

SPROUSE, Circuit Judge:

Thomas G. Flowers, Jr., appeals from his conviction on two counts of perjury in violation of 18 U.S.C. § 1623(c). Flowers' conviction was based on conflicting testimony he gave in two separate proceedings that were related to the criminal prosecution of Calvin Breit, a Virginia lawyer. Flowers first testified before the grand jury that

indicted Breit. He later testified at a hearing on Breit's motion for a new trial held after the latter's conviction.

The theory of the government's perjury case against Flowers was that he gave irreconcilably contradictory testimony concerning the details of a drug transaction that formed the basis of the government's prosecution of Breit. A bare reading of the transcripts of the two proceedings, however, does not reveal whether Flowers' testimony satisfied the perjury requirements of 18 U.S.C. § 1623(c). To evaluate Flowers' conviction, it is first necessary to review Flowers' testimony in light of the evidence presented and post-trial procedures employed in the Breit prosecution.

## I.

The government at Breit's trial established to the jury's satisfaction that Breit financed a 1980 drug transaction in which Flowers sold a quantity of cocaine to one Harry Creta. The thrust of the government's case was that Breit gave Creta a $35,000 cashier's check, $20,000 of which was intended and used to finance Creta's cocaine purchase from Flowers. Creta appeared as the government's principal trial witness. He testified that Flowers accompanied him to the drive-in window of a local bank where they cashed Breit's $35,000 cashier's check. According to Creta, the bank teller gave him $20,000 in cash, which he in turn handed over to Flowers in payment for the cocaine. The remaining $15,000 was received from the bank teller in the form of a $15,000 cashier's check, which Creta said he returned to Breit. The government introduced into evidence cancelled cashier's checks bearing the face amounts of $35,000 and $15,000 respectively.

Testifying in his own defense, Breit admitted giving Creta the $35,000 check, but denied that any part of it was used to purchase cocaine. He further testified that Creta returned to him both the $15,000 cashier's check and the remaining $20,000 in cash. The jury believed Creta, however, and Breit was convicted.

## A. *Flowers' Grand Jury Testimony*

Prior to Breit's trial, Flowers testified about the $35,000 transaction as a government witness before the grand jury that indicted Breit. Flowers' account of the event closely paralleled Creta's testimony at Breit's trial. Flowers testified that he sold cocaine to Creta and that Creta paid for part of one sale from the proceeds of a $35,000 cashier's check he cashed at the drive-in window of a bank. He continued in relevant part as follows:

... I had seen this check and it looked like a bank draft or a cashier's check, and it had 35,000 written on it. To the best I remember. It might have been 30, and it might have been 28. But it was a large amount of money.

Q. What was done with this check?
A. Took the check. We went to this bank. We went to the drive-in window, which I thought was highly unusual, you know, handling that big a transaction through the box isn't you know, too common, every-day thing.

. . . .

Some short conversation ensued [between Creta and the bank tellers]. He put the—took care of the—whatever the transaction was. Gave them the check. Or I'm not really sure what he did like that. The money went through....

. . . .

... You know, it wasn't like they had $35,000 laying there in the bank drawer. So it took just a couple of minutes. The money was brought back. He was handed a large package of money out through the box there, and he paid me, I believe, 15—or 20,000 of it, had some left over, and that was that.

. . . .

Q. Do you know if Mr. Creta got the entire amount of money in cash, this entire check in cash?
A. No, I don't. No, I don't. A lot of money came out that window. I've never seen anybody go to a drive-up window and do anything like that at all. I can't get $200 out without going inside.

. . . .

Q. And you were paid, you were sure, $15,000 in cash?

A. Out of that [cashier's check]?

Q. Right.

A. I was paid a large amount of cash. Exactly, I'm not sure.

Q. Was it over $10,000?

A. Oh, yes, sir.

Prior to the grand jury proceedings, Flowers had entered into a plea agreement with the government that required him to cooperate with the federal prosecutors handling the Breit prosecution. Flowers' grand jury testimony was given under the terms of the plea agreement. At the time of Breit's trial, Flowers, still a federal prisoner and still subject to the plea agreement, was transported to the federal courthouse in Norfolk, Virginia, as a potential government witness. The prosecution, however, did not call Flowers to corroborate Creta's testimony concerning the drive-in window transaction. *See United States v. Breit,* 767 F.2d 1084, 1086–87 (4th Cir.1985).

B. *Flowers' Testimony at the Hearing on Breit's Motion for a New Trial*

After his release from federal prison, Flowers gave a statement to Breit's counsel that was later used to support Breit's motion for a new trial.[1] In his statement, Flowers maintained that after his grand jury testimony, but prior to Breit's trial, he gave the government attorneys prosecuting Breit a different account of the drive-in window transaction-an account that would have impeached Creta's trial testimony and the government's general theory of the case. Relying on this alleged post-grand jury account, Breit contended in his new trial motion that the federal prosecutors had breached their obligation to divulge exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

According to the motion, Flowers' post-grand jury account informed the government that the cashier's check Creta negotiated in Flowers' presence was unrelated to the transaction in which Creta received and returned a $15,000 cashier's check to Breit. Specifically, Flowers' description of the total amount of cash Creta received when he negotiated the check, as well as the amount of money Creta paid him for the cocaine, were inconsistent with Creta's testimony that he used $20,000 of the check for the drug purchase and returned the remaining $15,000 to Breit. The motion concluded, therefore, that the government had been aware that the two cashier's checks it introduced to corroborate Creta's testimony played no part in the drug transaction in which Flowers was a party. The district court granted Breit a hearing on his motion.

Flowers was called as a witness at Breit's hearing. In relevant part, Flowers testified as follows:

[Direct Examination]

Q. Did Mr. Creta get any cashier's check or any other type of check back— [from the bank teller at the drive-in window transaction?]

....

[A.] Not that I recall, no, sir.

Q. All right, sir. How much of the cash was turned over to you?

A. Approximately 26 or $27,000.

. . . . .

BY THE COURT:

Q. [D]id you have a better recollection two years ago [at the time of the grand jury proceeding] than you have now.

A. Oh, yes, sir.

....

[Cross Examination]

Q. Now, it is your testimony today that you received from the proceeds of this $35,000 check $27,000; is that your testimony?

A. As I said before, the amount of money, to the best that I recall, was—I think it was $27,000, yes, sir. It could have been 26, but I'd say it was $27,000.

....

---

**1.** Flowers had been incarcerated in the same prison as Breit and apparently they were acquainted.

Q. Isn't it a fact, Mr. Flowers, that on May 27 of 1982, you told the Grand Jury that you received 15 to $20,000 from the proceeds of that $35,000 check?

A. Not that I recall. No, sir. Not that I recall. You have my—the Grand Jury statement there. If that's what was said or led to say, yes, sir, I guess it was.

. . . .

Q. If you told the Grand Jury in May of 1982 that you received 15 to $20,000 from the proceeds of that $35,000 check, and if that was true then, it is true now.

A. I would assume, yes.

Q. So your testimony today that you received $27,000 is not true?

A. No, I'd say that is not a correct statement.

Q. Is your testimony today that you received $27,000 true?

A. My testimony today, as to the best of my recollection, that is what I received that day in that car.

. . . .

[The Assistant United States Attorney then read to Flowers his Grand Jury testimony that he received between fifteen and twenty thousand dollars from Creta.]

Q. —your response was you received 15 to $20,000. Correct?

A. Yes, sir.

Q. And your memory was better when you gave that response before the Grand Jury. Correct?

A. Yes, sir. I'd say that is a correct statement.

. . . .

Q. Now, if I recall correctly, Mr. Flowers, it is your testimony today that you know for a fact that when Harry Creta cashed that check, he received $35,000 in cash.

A. No, sir. I wouldn't say that's a fact. I'd say that to the best of my recollection, as I've said, yes, sir.

Q. Well, this is all that we are asking you to testify to, what you recall.

A. Okay.

Q. And you recall that it was all in cash, $35,000?

A. Yes, sir.

. . . .

[The Assistant United States Attorney then read to Flowers his Grand Jury testimony that he did not know whether Creta received the entire proceeds in cash.]

Q. Do you recall that answer?

A. No, sir, I don't.

BY THE COURT:

. . . .

Q. If you answered that way, was it the truth?

A. Yes, sir, it was.

## II.

Based on the inconsistencies between Flowers' grand jury testimony and the testimony he gave at Breit's hearing on the new trial motion, Flowers was convicted on two counts of perjury under 18 U.S.C. § 1623.[2] The first count related to the discrepancy in the amount of cash Flowers said he was paid for the cocaine after Creta negotiated the $35,000 check. The second count related to the form of the proceeds that Creta obtained when he cashed Breit's check, i.e., whether Creta received the entire $35,000 in cash.

18 U.S.C. § 1623, captioned "False declarations before grand jury or court," provides that:

(a) Whoever under oath ... in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information ... knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

As noted, the government proceeded against Flowers exclusively under 18 U.S.C. § 1623(c), which outlines a statutory method of charging a witness with violating § 1623(a):

**2.** Flowers' indictment charged him on five counts of perjury. One count was dismissed prior to Flowers' trial and the jury returned a verdict of not guilty on two counts.

(c) An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false....

In addition, § 1623(c) sets forth a method for proving false declarations:

In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury.

██ Thus, under § 1623(c), the government had no burden to prove through extrinsic evidence the falsity of one of Flowers' declarations. Rather, the statute allows contradictory statements without more to form the basis of the perjury prosecution, and permits the jury to infer the falsity of a declaration from its inconsistency with another. *See Dunn v. United States,* 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979); *United States v. Moore,* 613 F.2d 1029, 1040 n. 90 (D.C.Cir. 1979), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980). The government must demonstrate, however, that the inconsistency between declarations is "irreconcilabl[e]" such that one of the statements is "necessarily false." [3] In addition, the government must show, as a matter of law, that each of the inconsistent declarations was "material to the point in question" at the proceeding in which it was uttered.

Flowers contends that none of his statements at Breit's post-trial hearing were irreconcilably inconsistent with his grand jury testimony. He also contends that neither the form of the proceeds of the negotiated check nor the amount of money he received in payment for the cocaine was "material to the point in question" at Breit's hearing. We agree with both contentions.

A.

Flowers' first contention that his statements were not irreconcilably contradictory essentially presents a challenge to the sufficiency of the evidence on which he was convicted. The standard for reviewing questions of evidentiary sufficiency in perjury cases is the same, of course, as it is in the review of any other criminal conviction.

In reviewing a jury verdict of guilty, an appellate court must examine the evidence in the light most favorable to the government. [citations omitted] A decision to overturn a jury verdict for want of substantial evidence must be confined to cases where the prosecution's failure to meet its burden of proof is clear. [citations omitted] As this court has stated, "[t]he relevant question is not whether the appellate court is convinced of guilt beyond a reasonable doubt, but rather whether, viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." [citations omitted]

*United States v. MacDougall,* 790 F.2d 1135, 1151 (4th Cir.1986).

██ Although we must review Flowers' sufficiency contention under the above-quoted standard, we are guided in our task by the precise and rigorous evidentiary standard that Congress has enacted in § 1623(c). While § 1623(c) has eliminated the need for extrinsic evidence of falsity, the statutory language "irreconcilably contradictory" and "necessarily false" requires a variance in testimony that extends beyond mere vagueness, uncertainty, or equivocality. Even though two declarations may differ from one another, the § 1623(c) standard is not met unless, taking them in context, they are so different that if one is true there is no way that the other can also be true.

---

**3.** We view the § 1623(c) standard of proof "irreconcilably contradictory" and the charging language "necessarily false" to require an equivalent variance in testimony.

■ Given this statutory requirement, we cannot conclude that a rational trier of facts could find Flowers guilty of perjury beyond a reasonable doubt. The jury that convicted Flowers evaluated the alleged inconsistencies in his testimony simply by reviewing and comparing the transcripts of the post-trial hearing and the grand jury proceeding. We too have carefully examined and compared Flowers' statements, viewing them as we must in the light most favorable to the government. In both proceedings, Flowers generally manifested uncertainty, forgetfulness, and perhaps even evasiveness about the events in question. These testimonial characteristics, however, do not satisfy the § 1623(c) evidentiary standard. *Cf. Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) (unresponsive, arguably misleading testimony cannot serve as predicate for federal perjury prosecution where answers given are literally true). More importantly, although some of his statements may appear facially inconsistent, in context Flowers made no declaration at the post-trial hearing that contradicted his grand jury testimony to the degree that one account must necessarily have been false.

It is true that in the first proceeding Flowers testified to receiving between 15 and 20 thousand dollars from Creta, whereas two years later Flowers remembered being paid 26 or 27 thousand dollars for the cocaine. Similarly, Flowers testified before the grand jury that he was not sure whether Creta received the entire proceeds from the $35,000 check in cash, while at the hearing he recalled that Creta obtained the entire amount in cash. If this were all the evidence in the transcripts, we might well be persuaded to sustain the jury's verdict; but in each isolated instance of seeming inconsistency, Flowers readily acknowl-

edged that the differences in his testimony were due to a faulty memory. Indeed, when it became apparent that Flowers' present recollection differed from what he told the grand jury, Flowers himself advised the district court that his grand jury testimony was the truth. He explained quite reasonably that his recall of the details of the 1980 bank transaction was better at the time of the 1982 grand jury proceeding than at the present (1984) hearing. Finally, the transcript of the post-trial hearing contains evidence from the government's own witness that the government was aware of Flowers' poor memory of the details of the transaction.[4] To the extent relevant here, this testimony corroborates Flowers' claims of memory lapse. In sum, this was not a situation like that contemplated by § 1623(c) where the demonstrated inconsistency is of such magnitude as to render it manifest that at least one tribunal heard testimony that was "necessarily false."[5]

B.

■ We also agree with Flowers that his testimony at Breit's post-trial hearing concerning the amount he received and the form of the proceeds of the 1980 transaction was not "material to the point in question" at that proceeding. 18 U.S.C. § 1623(c)(1). Materiality is a question of law reserved for the court. *United States v. Paolicelli,* 505 F.2d 971, 1973 (4th Cir. 1974). The general test for determining whether a false statement is material is if it has a natural tendency to influence, or is capable of influencing, the decision of the factfinder. *See United States v. Giarratano,* 622 F.2d 153 (5th Cir.1980); *United States v. Moore,* 613 F.2d 1029 (D.C.Cir. 1979), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980); *see also Unit-*

---

**4.** As we noted in *Breit,* "Agent O'Brien testified [at Breit's hearing] that Flowers had a poor memory for dates and was unable to give a specific date for anything." 767 F.2d at 1092.

**5.** Even if we were to view Flowers' later testimony concerning the form of the proceeds of the transaction in complete isolation, we could not conclude that the account was "irreconcilably contradictory" to his grand jury testimony. We observed in *Breit* that Flowers' statement to

the grand jury was "either (1) that he simply did not know whether the proceeds returned by the teller were entirely in cash, or (2) that more than one check was involved in the transaction." 767 F.2d at 1092 n. 6. Neither of these interpretations, if assumed to be true, would necessarily lead to the conclusion that Flowers' later recollection (of Creta receiving the entire $35,000 in cash) was "necessarily false."

*ed States v. Farnham*, 791 F.2d 331, 333 (4th Cir.1986) ("A statement is material for purposes of § 1623 if it has 'the natural effect or tendency to impede, influence, or dissuade the grand jury from pursuing its investigation' "). While it is true that the government ordinarily bears a light burden in proving materiality, that burden was not met here because Flowers' statements were incapable of influencing the outcome of Breit's post-trial hearing.

The district court granted Breit a hearing on his motion for a new trial to determine whether the prosecution violated Breit's due process rights by withholding exculpatory evidence at his trial.[6] The "exculpatory" evidence allegedly withheld, of course, was Flowers' alleged post-grand jury statement to the government attorneys. As noted, Breit claimed that this statement would have impeached Creta's version of the drive-in window transaction. In response to Breit's motion, however, the government insisted that even if the court accepted Flowers' second account of the transaction as true, Breit would not be entitled to a new trial because Flowers' statement could not have affected the jury's verdict. This was because Flowers' second version supported, rather than impeached, Creta's testimony on the only material point in question at Breit's trial— whether Creta used the proceeds of Breit's $35,000 check to purchase cocaine from Flowers. The government adopted this position in both its written pleadings and its oral argument to the district court deciding Breit's motion.

After hearing Flowers' testimony at the post-trial hearing, the court accepted the government's argument. It found that, with the exception of one detail not relevant here, Flowers' testimony corroborated the account Creta gave at Breit's trial. Comparing Flowers' two statements with Creta's trial testimony, the district court observed:

[T]hat the transaction did indeed occur; that the transaction occurred with re-

spect to a drug transaction, cocaine transaction, specifically; that the amount of the check was $35,000; that the transaction took place at a bank window; that it was late in the afternoon; that he was in an automobile with Harry Creta; and that Harry Creta conducted the bank transaction; that Harry Creta did not pay him all of the proceeds of the cashed check and paid him other parts of the proceeds; that Harry Creta kept a part of the proceeds; that he estimated the amount of money paid to him by Harry Creta at anywhere from $15,000 to $27,000, a range wholly consistent with the sum of $20,000 [to which Creta testified at trial] right in the midst of that.

*See Breit,* 767 F.2d at 1091–92. Indeed, the district judge concluded, as a former defense attorney, that "the testimony of Tommy Flowers would have been harmful to the defendant." *Id.*

■ On Breit's appeal from the denial of his motion for a new trial, we reached the same conclusion regarding the impeachment value of Flowers' second statement. *See id.* Noting that "the congruence between the two accounts is striking," [7] we were "not persuaded that the defense could have used Flowers' statements to impeach Creta." *Id.* at 1092. Agreeing with the district court, we stated that "the only issue" before the jury that convicted Breit was whether Breit's $35,000 check was intended to fund a cocaine transaction as Creta testified. *Id.* at n. 6. Because of this, we found one of Breit's alleged discrepancies between Flowers' and Creta's testimony to be immaterial because "[b]oth Creta and Flowers were clear that the $35,000 drive-in window transaction they remembered was intended to fund a cocaine deal of some sort, and not for any innocent reason." *Id.* For the same reason, we now conclude that Flowers' uncertain recollection that Creta received the entire amount of the $35,000 check in cash and paid $26 or $27,000 for the cocaine was not

---

6. Breit also alleged that Flowers' alleged statement constituted newly-found evidence which entitled him to a new trial.

7. The "two accounts" we were referring to were Creta's trial testimony and Flowers' testimony at the post-trial hearing and before the grand jury.

material to the point in question at the post-trial hearing.

### C.

It is of more than passing interest that the government took the position during Breit's motion for a new trial that Flowers' testimony was not material. The same government counsel that prosecuted Flowers and here contends that Flowers' testimony was material wrote the following in a brief opposing Breit's new trial motion:

> Flowers' present account of the transaction with the $35,000 cashier's check differs from Creta's testimony on ... whether the proceeds were returned to Creta wholly in cash or partly in cash and partly in a $15,000 cashier's check.... [This] point was [not] even slightly material to the question before the jury, i.e., whether Breit was or was not financing a cocaine deal with this money....
>
> ... [Flowers'] statement does not assert or imply anything about the purpose for which Breit gave Creta the $35,000 check. Indeed, to the extent the statement is material at all, it corroborates Creta's testimony rather than Breit's.... Flowers' statement ... agrees with Creta's testimony, as both assert that the bulk of the cash proceeds of this transaction were *not* kept by Creta for return to Breit but were instead given to Flowers.
>
> We reiterate, however, that not even this point is truly material, because the sole significant question about the transaction with the $35,000 check was not whether Breit gave that check to Creta (since that much was admitted), nor how it was broken down at the bank (since all agreed that the proceeds included at least $20,000 cash), but whether Breit intended the $20,000 as financing for a cocaine deal.

Moreover, the government attorney stressed that the question whether Creta received the check proceeds partly in cash or entirely in cash not only lacked materiality, but was "entirely collateral to the issue."

Flowers here contends that the government's earlier success in arguing the immateriality of his statements should, in fairness, estop it from urging the opposite resolution in this case. *See Allen v. Zurich Insurance Co.*, 667 F.2d 1162 (4th Cir.1982). We have determined, however, that there was insufficient evidence of irreconcilable inconsistencies, and that Flowers' testimony lacked the materiality required by 18 U.S.C. § 1623(c). Therefore, we need not decide whether the doctrine of judicial estoppel should preclude our consideration of the diametrically opposing view the government urges us to adopt in this appeal. In sum, we found the government's initial position on materiality persuasive in Breit's appeal and it remains persuasive to our determination on this appeal.

In view of the above, the judgment of the district court is reversed and the case remanded with instructions to the district court to set aside Flowers' conviction.

**REVERSED AND REMANDED.**