**UNITED STATES of America**

v.

**William Lewis MUNIZ.**

**Crim. No. 88–00084–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 14, 1988.

---

David S. Cayer, Asst. U.S. Atty., Alexandria, Va., for plaintiff.

V. Britt Richardson, Jr., Alexandria, Va., for defendant.

## ORDER

ELLIS, District Judge.

The two count indictment in this matter charges defendant with (i) making a false statement while under oath as a witness in violation of 18 U.S.C. § 1623 and (ii) obstructing justice in violation of 18 U.S.C. § 1503. More specifically, defendant here is charged with making false statements while under oath as a witness in *United States v. Stenger,* CR-85-00224-A (E.D. Va.1986), a firearms violation prosecution. There, Donald Dean Stenger, Jr. was on trial for, *inter alia,* conspiracy to possess and transfer unregistered firearms in violation of 18 U.S.C. § 371 and 26 U.S.C. § 5861. It was material to Stenger's prosecution that the Government prove Stenger unlawfully converted and modified an Uzi nine millimeter carbine firearm to a fully automatic mode. Defendant Muniz was a key witness against Stenger, having allegedly overheard Stenger make an incriminating statement. At trial, however, the defendant Muniz surprised the government by testifying in a manner that did not clearly inculpate Stenger. As a result, the case against Stenger was dismissed. The government contends that defendant's statements made under oath as a witness in the *Stenger* trial were false and constituted obstruction of justice, as well as perjury.

This matter came before the Court on three motions: (1) Motion for Discovery and Inspection; (2) Notice of Bill of Particulars; and (3) Motion to Dismiss the Indictment. The parties resolved the motions for discovery and inspection and the bill of particulars in advance of the hearing. The government agreed to provide defendant's counsel with a bill of particulars and to make available for inspection and copying all of the documents sought. Accordingly, those motions are withdrawn as moot. Only the motion to dismiss the indictment remains and is thus the focus of this Order.

Defendant alleges three grounds in support of the motion to dismiss portions of the indictment: (1) prejudicial preindictment delay; (2) failure of the indictment to state a charge under 18 U.S.C. § 1623; and (3) failure of the indictment to state a charge under 18 U.S.C. § 1503 on the ground that the giving of false statements under oath at trial does not constitute obstruction of justice. Based on a review of the record, and for the reasons set forth in this Order, the Court denies defendant's motion to dismiss the indictment.

## FACTS

Donald Dean Stenger, Jr. was indicted in 1985 for unlawful possession, manufacture, conversion and modification of Israeli Military Industries Uzi 9 millimeter carbine firearms to fire in the fully automatic mode. Defendant Muniz was a key witness in that prosecution. According to the government, in meetings with prosecutors and FBI agents prior to the *Stenger* trial, Muniz reported that he had heard Stenger admit having modified the Uzi firearms to fire in the fully automatic mode. Specifically, Muniz reported that at a test firing session, one of the weapons jammed and Stenger reportedly said that it was the cheap copper bullets that were the cause of the jamming and not the modifications that he, Stenger, had made. The government's case against Stenger rested chiefly on Muniz's expected testimony in this regard. At trial, however, Muniz testified as follows:

Q And what happened? Did either Mr. Marquez or Mr. Stenger bring anything with them?

A Yes. They had one of these Uzis with what looked like a silencer on the end of it. And we went out into the wash and started—Jimmy started shooting it and—Jimmy or Donny started shooting it and it jammed. Donny had said it was for the cheap bullets that we were using. And he tried to clear the thing out a few times and tried to shoot it again but it kept jamming.

\* \* \* \* \* \*

Q Mr. Muniz, what else did Mr. Stenger say about the machine gun after it jammed?

A He had told—*the only thing I remember him saying directly to me was that it was the cheap bullets, the copper bullets that were jamming in the barrel or whatever you call it, the mechanism and it was keeping the gun from firing.* And you could only fire four or five or six shots, I don't know and it would jam. It went through two or three cycles on that trying to clear out the bullets; and that's what he was trying to get the thing to fire.

Q Mr. Muniz, isn't it a fact that Mr. Stenger said to you that the jamming of the machine gun—

\* \* \* \* \* \*

—That the jamming of the machine gun was not the result of the modifications that he had made to that Uzi but because of the cheap ammunition?

A Yes, he may have said that. *I don't know if he said—modifications that he made.* It was the modification to the gun. Jimmy was running the whole show.

Q Mr. Muniz, isn't it a fact that when you were interviewed by Agent Wetterman in March of 1985, specifically March 5th and 6th, you told Agent Wetterman that at this very incident you have described in your testimony that Mr. Stenger told you that the jamming problem was caused by the ammunition and not as a result of the modifications that he, Stenger, had made to the Uzi? Isn't it a fact that's what you told Agent Wetterman in March 1985?

A I made that statement, *but I don't know if Jimmy said it or if Donny said it.* (TR at 97–99)

\* \* \* \* \* \*

BY MR. WARNER:

Q Do you have any personal knowledge, did you ever see Mr. Stenger convert these firearms that Mr. Marquez had?

A *No, I have no personal knowledge at all.*

Q Did Mr. Stenger ever tell you that he converted the firearms that Mr. Marquez had?

A *No, he did not.*

Q And you saw Mr. Stenger on numerous occasions, afterwards at the wash at your house, but he never admitted to doing those conversions?

A *No.* We flew a bunch together. *He never talked about any business or anything like that.*

(TR at 113). In summary, Muniz's trial testimony, contrary to his pre-trial statements to prosecutors, did not specifically identify Stenger as the person who made the incriminating statement. For this reason, according to the government, the Stenger prosecution in May of 1986 failed.

Immediately following this testimony, Assistant United States Attorney (AUSA) Karen P. Tandy, assigned to handle the *Stenger* prosecution, concluded that Muniz had committed perjury. She further concluded that she would not be able to handle the prosecution of Muniz because she would likely be a key witness. She reported this to her superiors, requesting reassignment of the case to another Assistant United States Attorney. During the period June 1986 through February 1987 some investigatory activities occurred, including the gathering of witness statements and the issuance of subpoenas to obtain some documents. The investigation also succeeded in locating Marquez, one of the persons present at the time Stenger allegedly made the incriminating statement concerning the cause of the Uzi jamming during automatic firing. According to the government, Marquez was prepared to testify that Stenger had stated that the cause of the jamming was the cheap bullets and not the modifications that he, Stenger, had made to the Uzi's. Marquez was arrested in February, 1987 and thereafter pleaded guilty in April, 1987.

In February 1987 the matter was reassigned to AUSA Liam O'Grady. In midsummer 1987, AUSA O'Grady's heavy workload was such that the Muniz perjury indictment was again reassigned, this time to AUSA David S. Cayer. AUSA Cayer pursued the investigation during the late summer and fall of 1987. Specifically, the investigation during this period led to the

location of a witness in Arizona. AUSA Cayer and counsel for this witness negotiated during the fall of 1987. Ultimately, this witness testified before a Grand Jury in this District on December 8, 1987 and, as a result of this testimony, the government was able to locate a Mr. Kallette who, in the government's view, is a pivotal witness in the Muniz case.

According to the government, Kallette will testify that Muniz, in a meeting with Kallette prior to the Stenger trial, made a statement to Kallette to the effect that Stenger need not worry about the trial because he, Muniz, would structure his testimony to insure that Stenger was not criminally implicated. AUSA Cayer negotiated with Kallette's counsel and ultimately reached an agreement whereby Kallette would testify against Muniz in exchange for immunity. Immunity was then obtained and Kallette testified before the Grand Jury in this District on April 13, 1987. The instant indictment issued on the same day. Defendant Muniz was thereafter arrested on June 3, 1988, and brought before a Magistrate in the District of Arizona pursuant to Rule 40, Fed.R.Crim.P. Muniz was thereafter returned to this District and was arraigned on June 10, 1988.

In March 1988, approximately one month before the Muniz indictment issued, Stenger died in jail. The death was drug-related and unexpected.

## ANALYSIS

### A. Pre–Indictment Delay

It is settled that a defendant's chief safeguard against prejudice from prosecutorial delay is the statute of limitations, but that there are limited circumstances in which the Due Process guarantee of the Fifth Amendment also protects a defendant. *See United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468

(1971). Equally settled is the principle that a defendant carries a heavy burden to show a Due Process violation based on pre-indictment delay. *Lovasco,* 431 U.S. at 795–96, 97 S.Ct. at 2051.

■ The Fourth Circuit, construing *Lovasco* and *Marion,* has established a two-pronged inquiry to determine whether a pre-indictment delay is violative of due process.

First, a court must assess whether the defendant has suffered actual prejudice, and the burden of proving such prejudice is clearly on the defendant. If the threshold requirement of actual prejudice is met, the court must then consider the Government's reasons for the delay, balancing prejudice to the defendant with the Government's justification for delay. *United States v. Automated Medical Laboratories, Inc.,* 770 F.2d 399, 403 (4th Cir. 1985).[1] Here, defendant Muniz has failed to meet his burden of showing either actual prejudice or that the reasons for delay were improper or deliberately caused by the government with the intent to gain an advantage over defendant.

Put simply, defendant's claim of actual prejudice rests solely on his assertion that had Stenger lived, he would have testified favorably to Muniz, presumably denying the statement. This assertion is neither supported nor corroborated by any evidence. Muniz offers no documents, witnesses or other evidence of any kind to support this assertion. As such, the assertion fails to meet any sensible standard for establishing actual prejudice. Were this Court to hold otherwise, pre-indictment delay dismissals would become routine in all cases where witnesses died during the investigation. In those circumstances, all a defendant would have to do to win dismissal is assert, without support or corroboration, that the deceased witness would have exculpated the defendant. This is not and should not be the law. More is required to

1. *See also United States v. Langella,* 776 F.2d 1078 (2d Cir.1985), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986). There, the court rejected a due process claim based on a three year pre-indictment delay. According to the Second Circuit, to succeed on such a claim, a defendant must prove that the delay "resulted in actual prejudice and the government's reasons for the delay were improper." 776 F.2d at 1082.

establish actual prejudice stemming from the death of a putative witness. There should appear some evidence or facts, independent of defendant's bare assertion, tending to show that the deceased witness' testimony would indeed have been materially exculpatory. In the instant case, no such facts or evidence exist.[2] On the contrary, the witnesses discovered by the government suggest that Stenger made the disputed statement and that Muniz' testimony to the contrary was deliberate dissembling. In sum, Muniz' claim of actual prejudice on account of Stenger's death is wholly unpersuasive.

■ Even assuming, *arguendo*, that Muniz has met some low-threshold standard for establishing actual prejudice, he fails to meet the second prong of the *Automated Medical Laboratories* test, namely, "balancing prejudice to the defendant with the Government's justification for the delay." 776 F.2d at 1082. This balance in the case at bar weighs decidedly against dismissal of the indictment. Dismissal of the indictment is unwarranted where, as here, the government's reasons for delay are neither unreasonable nor tainted by an intent to use delay to gain an unfair advantage. *See United States v. Gouveia*, 467 U.S. 180, 192, 104 S.Ct. 2292, 2299, 81 L.Ed. 2d 146 (1984). Here, there is no evidence whatever that any delay was deliberate. Moreover, it appears that the government was reasonably, if not expeditiously pursuing the investigation during the less than two years that elapsed from the alleged offense to the indictment. While the reassignments of the case may have slowed progress somewhat, there is no reason to believe that there was any excessive or unnecessary delay. Stenger's death was unforeseeable, and there is not even a scintilla of evidence to suggest that the government deliberately dragged its feet with this or any other event in mind.

In summary, this is a case where defendant Muniz *may possibly* have suffered some prejudice as a result of the less than two years that elapsed between the alleged offense and the indictment, and it is also possible that the investigation could have been completed more expeditiously. But these are not the limited circumstances in which Due Process mandates dismissal of the indictment. Instead, this is merely a case of *possible* prejudice caused by the passage of time. As such, the appropriate safeguard is the applicable statute of limitations, not the Due Process clause.

A review of pertinent case law supports the Court's holding. In *United States v. Marion*, 404 U.S. 307, 321–22, 92 S.Ct. 455, 463–64, 30 L.Ed.2d 468 (1971), the Supreme Court held that a 38 month pre-indictment delay gave defendant no remedy under either the Due Process clause or the Sixth Amendment in the absence of actual prejudice and intentional governmental delay. In the Supreme Court's view, defendant's position rested solely on the possibility of prejudice inherent in any extended delay. This possibility is precisely the target of statutes of limitation. Significantly, the Court acknowledged that this possibility of prejudice included the chance that "evidence [would] be lost." *Id.* at 326, 92 S.Ct. at 466. Here, as in *Marion*, there is no actual prejudice and no showing of government delay for the purpose of gaining tactical advantage. There is, at best, only the possibility of prejudice. Thus, the pre-indictment delay here, as in *Marion*, fails to trigger a constitutional remedy.

This Court's conclusion on this matter, however, is subject to the caveat that evidence at trial might ultimately demonstrate the existence of actual prejudice sufficient to warrant application of the Due Process clause and dismissal of the indictment. Accordingly, this Order specifically leaves open to the defendant the opportunity to renew his motion to dismiss based on pre-

---

**2.** Circumstances concededly invite the inference that Stenger, if he were available to testify, would deny ever making a statement that he, Stenger, modified an Uzi. Yet there is also some reason to doubt that Stenger would waive his self-incrimination privilege and willingly testify on this matter, however small might be the risk of prosecution. In any event, the relatively weak inference invited by these circumstances is, by itself, not enough to raise the claim from possible to actual prejudice.

indictment delay should the facts adduced at trial disclose the existence of actual prejudice. At the present time, however, defendant Muniz's claim is speculative and at best premature.

## B. Failure to State Charge Under 18 U.S.C. § 1623

Defendant contends that his trial testimony in *Stenger* reflects, at most, evasiveness, not perjury, therefore the indictment should be dismissed. He relies chiefly on *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) and its progeny.[3] These decisions all stand generally for the following proposition:

> [T]he perjury statute is not to be loosely construed, nor the statute involved simply because a wily witness succeeds in derailing the questioner—so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry.

*Id.* at 360, 93 S.Ct. at 600.

The flaw in defendant's argument is manifest: it is, in this context, a jury question whether Muniz spoke "the literal truth" and, if not, whether the falsification was deliberate. If Marquez and Kallette testify as the government expects, the jury will be entitled to infer that Muniz' testimony was false, not merely evasive.[4] Again, however, this conclusion does not preclude the trial judge from revisiting this issue at trial. In the first place, these witnesses may not testify at trial as expected. Moreover, other evidence adduced at trial may reflect that defendant's testimony was, as in *Bronston* and *Earp*, wily and evasive, but not perjurious.

## C. Failure to State a Charge Under 18 U.S.C. § 1503

■ The gist of defendant's contention here is that perjurious statements, by themselves, may not form the basis of an obstruction of justice prosecution. To include such a count in the instant case, according to defendant, amounts to an impermissible "loading up" of the indictment. Close scrutiny reveals this contention to be meritless.

■ At one time there was apparently some doubt over whether false testimony could also constitute obstruction of justice. Two circuits appeared, on the face of it, to

---

3. *See, e.g., United States v. Earp*, 812 F.2d 917 (4th Cir.1987) (not perjury for Ku Klux Klan member to answer simply "no" when asked whether he had ever burned a cross at the residence of interracial couple when he knew full well that he had attempted unsuccessfully to do so).

Defendant also relies on *United States v. Flowers*, 813 F.2d 1320 (4th Cir.1987). There, defendant was convicted for perjury solely on the basis of alleged inconsistencies in his grand jury and post-trial hearing testimony. The Fourth Circuit reversed, holding (i) that defendant's testimony may have been inconsistent but was not of such a magnitude to render it "necessarily false," and (ii) that defendant's testimony was not material to the point in question at the prior proceedings. 813 F.2d at 1325. Yet Muniz's reliance on *Flowers* is misplaced. In *Flowers*, the defendant was indicted under 18 U.S.C. § 1623(c), which provides that an indictment for perjury alleging that a defendant made two or more declarations which are inconsistent to the degree that one of them is *necessarily false,* need not specify which declaration is false, where each declaration was material to the point in question. Importantly, section 1623(c) also provides that in any prosecution under that subsection, the falsity of any declaration set forth in the indictment shall be established, *sufficient for conviction,* by proof that the defendant made *irreconcilably contradictory declarations material to the point in question* in any proceeding before a court or grand jury. *Flowers,* therefore, was concerned with a conviction obtained exclusively under 1623(c), where the only evidence introduced at trial are the inconsistent statements. Such is not the case here; the government has brought a perjury charge against Muniz pursuant to section 1623(a), not (c). As discussed, the government intends to put on other witnesses who presumably will testify that defendant intended to mislead the government. *Flowers,* therefore, is inapposite.

4. In that event, for example, a jury could conclude (i) that Stenger made the admission, (ii) that defendant Muniz heard it and accurately reported it to the agent and AUSA, and (iii) that defendant Muniz deliberately equivocated and dissembled at trial to protect Stenger when he testified that he could not recall whether "Jimmy said it or Donny said it" and where he testified that Stenger "may" have said it but he did not know if Stenger said "modifications that he [Stenger] made." (TR at 97–99).

be in conflict.[5] Now, however, it seems adequately settled in this circuit that false testimony can also amount to obstruction of justice where the effect of such testimony is shown to have obstructed the court in the performance of its duty. *See United States v. Caron,* 551 F.Supp. 662, 667–70 (E.D.Va.1982), *aff'd without opinion,* 722 F.2d 739 (4th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984). In *Caron,* the court held that the government's burden on an obstruction of justice charge was not satisfied merely by proof that defendant testified falsely before the grand jury but that more is required: the government must also prove that the false testimony served to thwart the court in the performance of its duties. *Id.*[6] Implicit in the *Caron* decision is that an obstruction of justice charge may indeed arise out of false testimony before a grand jury. More recent decisions confirm this principle.[7] Applying this principle to the instant indictment leads inescapably to the conclusion that dismissal is inappropriate. An obstruction charge is properly pled in the indictment. *See Caron,* 551 F.Supp. at 669–70. Of course, whether the government's evidence is sufficient to create a jury issue on this charge is another matter, one not affected by this ruling. Defendant Muniz will be entitled to an acquittal unless the government can show, in addition to perjurious and evasive[8] testimony, the further element of obstruction to the Court in the performance of its duty.

Defendant Muniz acknowledges the *Griffith* and *Caron* line of cases, but argues that they are inapposite because they focus solely on grand jury testimony. This argument is unpersuasive. There is no reason in principle, nor anything in the language or rationale of section 1503 that supports limiting the statute's reach to grand juries. Common sense leads to the inescapable conclusion that justice may be obstructed by false testimony not only in the course of an investigation or grand jury hearing but also during a trial. Accordingly, the Court denied defendant's motion to dismiss the obstruction of justice charge.

The Clerk is directed to send copies of this Order to all counsel of record.

---

**5.** *Compare United States v. Griffin,* 589 F.2d 200 (5th Cir.1979) (false grand jury testimony may amount to obstruction of justice), *cert. denied,* 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979) *and United States v. Howton,* 688 F.2d 272 (5th Cir.1982) (false grand jury testimony covered up illegal acts) *with United States v. Essex,* 407 F.2d 214 (6th Cir.1969) (filing of false affidavit was not a contemptuous act within the scope of obstruction of justice statute).

**6.** The rationale for this further requirement was explained by the Supreme Court in *In Re Michael,* 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30 (1945):

All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. Therefore, it cannot be denied that it tends to defeat the sole ultimate objective of a trial. It need not necessarily, however, obstruct or halt the judicial process. For the function of trial is to sift the truth from a mass of contradictory evidence, and to do so the factfinding tribunal must hear both truthful and false witnesses. It is in this sense, doubtless, that this Court spoke when it decided that perjury alone does not constitute an "obstruction" which justifies usurpation of the contempt power and that there "must be added to the essential elements of perjury under the general law the further element of obstruction to the Court in the performance of its duty."

326 U.S. at 227–28, 66 S.Ct. at 79–80 (citations omitted).

**7.** *United States v. Gonzalez–Mares,* 752 F.2d 1485, 1491–92 (9th Cir.1985), *cert. denied,* 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985); *United States v. Perkins,* 748 F.2d 1519, 1527–29 (11th Cir.1984).

**8.** It is also clear that evasive testimony, as well as perjurious testimony, can serve as the basis of an obstruction of justice charge. *See United States v. Perkins,* 748 F.2d 1519, 1528 (11th Cir.1984).