**UNITED STATES of America, Appellee,**

v.

**Quillin PORTER, Appellant.**

**No. 92–3813.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 18, 1993.

Decided May 27, 1993.

Edwin Gartin, Bentonville, AR, argued, for appellant.

William Cromwell, Asst. U.S. Atty., Ft. Smith, AR, argued, for appellee.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and KYLE,* District Judge.

KYLE, District Judge.

## Introduction

Defendant Quillin Porter appeals his conviction of perjury for making "irreconcilably contradictory declarations material to the point in question" under oath in violation of 18 U.S.C. § 1623(c). For the reasons set forth below, we reverse the conviction.

* The HONORABLE RICHARD H. KYLE, United States District Court for the District of Minnesota, sitting by designation.

1. This portion of defendant's testimony, as well as his testimony at the evidentiary hearing held

## Background

The perjury charge stems from defendant's statements made (a) before a grand jury on May 18, 1989 as part of a plea agreement and (b) during an evidentiary hearing on defendant's own habeas corpus petition. In November, 1988, defendant was indicted on three counts of mail fraud and three counts of securities violations for his role in falsifying newsletters sent out to investors in several investments clubs which he operated. Defendant entered a plea of guilty to two counts of mail fraud and one count of securities law violation pursuant to a plea agreement in which he agreed to testify in grand jury proceedings against two other individuals.

Pursuant to that plea agreement, defendant testified before a grand jury on May 18, 1989. His testimony included the following exchange between himself and the Assistant United States Attorney (AUSA):

Q. How would you keep your individual investors advised on how their investments were doing?

A. I would send out a monthly newsletter that purportedly detailed all the trades and the amount of money that had been made along with a dividend check to each party.

Q. After a period of time, did it become necessary for you to falsify information on those newsletters?

A. Yes, it did.

Q. And is that why you pled guilty to the things you pled guilty to?

A. Yes.

Q. Who was responsible for preparing that newsletter that was sent to the investors?

A. I was.[1]

Following his grand jury testimony and pursuant to his plea of guilty, the district court sentenced defendant to five years in prison on each of the three counts, to be served consecutively. Subsequently, defen-

in connection with his habeas corpus petition (set out in the following paragraph of this opinion) form the basis for the section 1623 (perjury) indictment.

dant filed a habeas corpus petition to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel.

On April 14, 1992, an evidentiary hearing on the section 2255 petition was held before the magistrate judge[2] during which the following exchange took place between defendant and the AUSA:

Q. Mr. Porter, you pled guilty because you are guilty, is that not correct?

A. That is not correct.

Q. You mailed newsletters out.

A. I'm not aware of that.

Q. These newsletters that you admitted were misrepresentations of the fact, you mailed these to the various investors?

A. I did not admit that.

Q. You did, though, do it. You mailed it [to] them?

A. I did?

Q. Yes.

A. I did not—

COURT: Sir, the answer is yes or no.

A. No.

Q. Who mailed in on your behalf?

A. I don't know.

Q. Who generated them?

A. I don't know.

During the course of this hearing, defendant, alleging ineffective assistance of counsel, claimed not only that his counsel failed to make certain objections to the pre-sentence investigation report and failed to appeal certain issues, but also failed to inform him of the specific nature of the charges to which he had pleaded guilty. Although the latter basis for a claim of ineffective assistance of counsel was not contained in defendant's habeas corpus petition, the magistrate judge considered the petition to be amended to include such a claim.

The magistrate judge issued a Report and Recommendation on June 8, 1992, finding no evidence of ineffective assistance of counsel and recommending denial of defendant's petition. The district court adopted the Report and Recommendation on July 13, 1992.

Following the habeas petition hearing, defendant was indicted on June 18, 1992 for violating 18 U.S.C. § 1623(c), based on the "irreconcilably contradictory" and "material" statements of defendant before the grand jury in 1989 and his testimony before the magistrate judge at the habeas hearing in 1992. The indictment charges that the two statements set out in the preceding paragraphs of this opinion were "inconsistent to the degree that one of them is necessarily false."

At his perjury trial[3], defendant testified that he had falsified the information in the newsletters and that he was responsible for sending them out, but denied that he had mailed any of them. Trial Transcript at 53–54. He also testified that he had pled guilty to the mail fraud charges for reasons other than being guilty of committing acts constituting mail fraud. Such reasons included: he was tired of fighting, his attorney recommended the plea, his life had been threatened, and he did not feel the trial judge could be impartial because he was the same judge who had presided over a civil suit against defendant brought by the investors. *Id.* at 54. Defendant testified that he had given truthful answers to the specific questions asked of him, although he acknowledged that there was some uncertainty in his answers to questions in the habeas petition hearing. *Id.* at 57–58.

At the close of the government's case and again at the conclusion of the trial, defendant moved for a judgment of acquittal based on the insufficiency of the evidence regarding the alleged irreconcilable inconsistency between his declarations. The district court

2. The Honorable Beverly R. Stites, United States Magistrate Judge for the Western District of Arkansas.

3. Prior to trial, defendant moved to dismiss the indictment on the grounds that his testimony given during the 1992 habeas petition evidentiary hearing was not material to "the point in question"—his claim of ineffective assistance of counsel. The district court denied the motion. In view of the resolution of this appeal, it is unnecessary to reach or discuss this issue raised by defendant on appeal.

denied the motions. On September 10, 1992, the jury returned a verdict of guilty on the single perjury count. Defendant was sentenced to a term of imprisonment of 21 months. This appeal followed.

■ Defendant appeals his conviction on the grounds that (1) his declarations in the habeas corpus petition hearing were not material to the issue to be determined in that hearing; (2) the evidence at trial was insufficient to convict him in that (a) the two statements were not irreconcilably inconsistent; (b) the government offered no proof that both statements were made within the applicable statute of limitations; and (c) the statements were not false as defendant believed they were true when he uttered them; and (3) the district court erred in declining to instruct the jury on the defense of vagueness, uncertainty or equivocality of defendant's statements. The Court finds defendant's argument that the government failed to prove that his declarations before the grand jury and those made in the habeas petition hearing were irreconcilably inconsistent dispositive of this appeal.

## Discussion

Section 1623(c), Title 18, United States Code, provides:

An indictment or information for violation of this section alleging that, in any proceeding before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if—

(1) each declaration was material to the point in question, and

(2) each declaration was made within the period of the statute of limitations

for the offense charged under this section.

In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to the first sentence of this subsection that the defendant at the time he made each declaration believed the declaration was true.[4]

■ In reviewing the sufficiency of the evidence to support a conviction, the Court "look[s] at the evidence in the light most favorable to the verdict and accept[s] as established all reasonable inferences supporting the verdict. [The Court] then uphold[s] the conviction only if it is supported by substantial evidence." *United States v. Plenty Arrows*, 946 F.2d 62, 64 (8th Cir.1991) (citation omitted). An essential element of perjury under 18 U.S.C. § 1623(c) is that the statements be "irreconcilably contradictory"—that is, "inconsistent to the degree that one of them is necessarily false." By including this "precise and rigorous evidentiary standard" in section 1623(c), Congress has enacted a statute under which a conviction "requires a variance in testimony that extends beyond mere vagueness, uncertainty, or equivocality." *United States v. Flowers*, 813 F.2d 1320, 1324 (4th Cir.1987). "Even though two declarations may differ from one another, the § 1623(c) standard is not met *unless*, taking them in context, they are *so different* that if one is true there is *no way* that the other can also be true." *Id.* (emphasis added).[5]

---

4. In order to sustain a conviction under this statute, the government must prove each of the following elements beyond a reasonable doubt:

 1) Defendant, under oath,

 2) made two or more declarations,

 3) which were irreconcilably inconsistent,

 4) each of which was material to the point in question,

and

 5) each of which was made within the statute of limitations.

*United States v. Harvey*, 657 F.Supp. 111, 113–14 (E.D.Tenn.1987).

5. In this respect, paragraph (c) of section 1623 differs from the more commonly used paragraph (a) where an offense is committed by any person who "knowingly makes any false material declaration ..." in a judicial proceeding. Paragraph

Under this statutory standard, and reviewing the evidence in the light most favorable to the verdict, the Court cannot conclude that there is substantial evidence to support the conviction. At trial, the government introduced the relevant portions of the transcripts of defendant's testimony before the grand jury and at the habeas petition hearing and called two witnesses. The first witness, FBI Agent Richard O'Connell, testified that during his investigation of the mail fraud and securities violations, defendant had made statements to him which were consistent with those defendant made before the grand jury. Trial Transcript at 14.

On cross-examination, Agent O'Connell was questioned regarding the differences in the questions asked of defendant during the grand jury proceeding and the habeas petition hearing. He testified that a review of the two transcripts indicated that the thrust of the grand jury questions and answers was defendant's falsification of information in the newsletters sent to investors, while the questions and answers in the habeas petition hearing focused more on the physical mailing of the newsletters. Trial Transcript at 20–24. Agent O'Connell also indicated that the questions asked in each proceeding were not identical, and that there was some uncertainty in one of defendant's answers given in the habeas petition hearing. *Id.* at 29.

The second witness, Scott Sullivan, was a former employee of defendant's company, and testified that defendant provided the information for the newsletters, but that either Mr. Sullivan or the secretary typed up the newsletters, duplicated them, placed them in envelopes and delivered them to the post office. He testified that these activities took place at defendant's request and under his direction. Trial Transcript at 34–35.

■ The Court concludes that the evidence presented by the government, with the exception of the transcripts of the grand jury proceeding and the habeas petition hearing containing the testimony quoted in the indictment, addresses only whether defendant was guilty of mail fraud and certain securities violations. However, these charges were not before the jury, and such evidence was not relevant to the question of whether defendant made irreconcilably inconsistent statements such that one statement was "necessarily false." [6] The jury had the opportunity to compare the transcripts and the portions of those transcripts reproduced in the indictment, but such a comparison could not yield a conclusion that defendant's statements were "irreconcilably inconsistent"—vague, evasive or unresponsive, yes, but not *irreconcilably* inconsistent. When a defendant's testimony is vague, unresponsive or evasive, there can be no basis for a perjury conviction when the answers given are literally true. *See Bronston v. United States*, 409 U.S. 352, 361–62, 93 S.Ct. 595, 601, 34 L.Ed.2d 568 (1973)[7]; *Flowers*, 813 F.2d at 1325.

(a) requires proof of intent and of falsity, whereas paragraph (c) requires proof that the statements are so inconsistent that one is necessarily false without the government having to prove *which* statement is false. Thus, only in a paragraph (a) prosecution is it necessary that the government submit evidence regarding the defendant's intent to falsify the information or mislead the government. In contrast, section 1623(c) "has eliminated the need for extrinsic evidence of falsity." *Flowers*, 813 F.2d at 1324. *See United States v. Muniz*, 690 F.Supp. 482, 487 n. 3 (E.D.Va.1988) (discussing the differences between the required proof under paragraphs (a) and (c) of section 1623).

**6.** The Court notes that the jury may not have accurately understood the charges before them and the relevancy of the evidence presented. During its deliberations, the jury asked one question of the district court, shortly after the case was submitted—whether "someone [is] guilty of mail fraud if that someone promulgates newsletter[s] for mailing material yet doesn't personally physically organize, disseminate or mail the copies himself...." Trial Transcript at 97. Apparently, the jury was under the impression that defendant's *conduct,* as opposed to his *statements* at the grand jury and habeas petition hearings, was of some relevance to the perjury indictment.

The district judge correctly reminded the jury that they were to decide only if defendant was guilty of making irreconcilably inconsistent statements, not whether he was guilty of mail fraud. Trial Transcript at 97–99. However, it is clear that the jury was, at least until receiving the district court's clarification, unclear as to the issue to be determined and which evidence was relevant to that determination.

**7.** Although *Bronston* involved a prosecution under 18 U.S.C. § 1621, courts have applied its holding to prosecutions under 18 U.S.C. § 1623.

In addition, the questions in the two proceedings were not identical, allowing defendant to give answers in the habeas petition hearing which did not directly contradict his previous answers. *See Bronston*, 409 U.S. at 361, 363, 93 S.Ct. at 601, 602 ("The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry.... Precise questioning is imperative as a predicate for the offense of perjury."); *United States v. Reveron Martinez*, 836 F.2d 684, 691 (1st Cir.1988) ("When a witness bobs and weaves, it is the questioner's obligation to get the proper bearings; a federal perjury prosecution is medicine too powerful to be dispensed casually as a quick fix for unresponsiveness."). In order for the government to establish the necessary irreconcilable inconsistency between defendant's statements, the questions asked of him should have focused on the same aspects of defendant's conduct in the mail fraud scheme.

■ While defendant's statements may appear facially inconsistent with one another, the context of the statements in the two proceedings illustrates that defendant made them in response to different questions emphasizing two different aspects of the charge to which he had pled guilty—the physical generating (including typing, collating, and stuffing envelopes) and mailing of the newsletters and the responsibility for including false information in those letters and directing that they be sent to investors. Defendant did not commit perjury simply by answering the questions in a narrow, arguably evasive fashion, giving a literal meaning to the words "mail" and "generate" and to the

reasons and the number of reasons for his pleading guilty. The statements of the defendant must be inconsistent to the degree that "one of them is necessarily false." In our view, the statements in this case do not satisfy such a standard.

On the evidence before it, this Court concludes that a jury could not reasonably conclude that defendant's statements were irreconcilably inconsistent. The statements made during the habeas petition hearing were vague, unresponsive and evasive, and the government did not, or was unable to, elicit testimony from defendant that he was *not*, in fact, responsible for supplying the false information for the newsletters or for directing that they be sent to investors— testimony which *would have been* irreconcilably inconsistent with his testimony before the grand jury. The district court should have granted defendant's motion for acquittal made at the close of the government's case.[8]

For the reasons discussed above, the judgment of the district court is reversed and the case is remanded for entry of judgment of acquittal.

FLOYD R. GIBSON, Senior Circuit Judge, concurring specially.

I reluctantly concur with the majority's opinion, and write separately to express my concern that a minute distinction between the word "send" and "mail" has been used to overturn a jury verdict. In everyday life, individuals use the words interchangeably; only under the scrutiny of the judicial microscope could such a distinction be grounds for reversal of a conviction. The *New World*

---

*See, e.g., United States v. Reveron Martinez*, 836 F.2d 684, 689 (1st Cir.1988); *United States v. Lighte*, 782 F.2d 367, 372 (2d Cir.1986); *United States v. Tonelli*, 577 F.2d 194, 198 (3d Cir.1978).

**8.** The district court considered defendant's arguments regarding the consistency of his statements to be "jury arguments." Trial Transcript at 41–42.

The government asserts that because defendant, after making a motion for acquittal at the close of the government's case, chose to put on evidence in the form of his own testimony, the sufficiency of the evidence should be judged on the entire record. *Cline v. United States*, 395 F.2d 138, 144 (8th Cir.1968). Having reviewed

defendant's testimony at trial, the Court finds nothing which would support a jury's finding that his two previous statements were irreconcilably inconsistent. Defendant admitted that he was responsible for providing the false information for the newsletters and for causing them to be sent to investors. He denied, however, that he typed, copied or collated (what he defined as "generating") the newsletters, or physically mailing them himself. Defendant also testified that he had pled guilty to the mail fraud and securities violation charges not only because he thought he was guilty at the time, but for other reasons as well. Such testimony does not prove that his statements at the habeas petition hearing were irreconcilably inconsistent with his grand jury testimony.

*Dictionary* defines "send" as a verb that means "to dispatch, convey, or transmit (a letter, message, etc.) by mail, radio., etc. "Mail" is defined as a verb that means to "send by mail, as by putting into a mailbox; post."[9] Had the government proceeded to question Porter about whether he "sent" the falsified documents, we would not be addressing this issue. Unfortunately, however, the questioning did not go far enough and Porter is able to use an infinitesimal distinction in language to his advantage.

9. NEW WORLD DICTIONARY (2d ed. 1974).