JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Jameeca Mittman ("defendant") appeals from the judgment of the trial court which, following a jury trial, convicted her of felonious assault and child endangering. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} On May 7, 1999, the defendant was indicted on one count of felonious assault in violation of R.C. 2903.11 and one count of child endangering in violation of R.C. 2919.22 for events taking place on December 5, 1998 when she allegedly abused a minor child ("the child") entrusted to her care. On May 21, 1999, a capias was issued and on June 12, 1999 a warrant was issued. On March 27, 2001, the capias was returned and the defendant was in custody. The defendant pled not guilty to the charges and the matter proceeded to a jury trial on October 19, 2001.
 {¶ 3} Evidence presented at trial revealed that Shawanda Boldware and Fabian Hamilton had a baby boy together. On December 4, 1998, Mr. Hamilton met Ms. Boldware to pick up the then two-year old child for a weekend visit with him. At the time that Mr. Hamilton took the child, along with his diaper bag and change of clothes, the boy was not injured and appeared to be perfectly healthy. Ms. Boldware and Mr. Hamilton agreed that Ms. Boldware would pick the child up on Sunday, December 6th.
Mr. Hamilton took the child home to his apartment which he shared with his girlfriend, the defendant. The events which took place on Saturday are in dispute. However, both the defendant and Mr. Hamilton testified that Mr. Hamilton went to work at approximately 10:30 a.m. The defendant claims that Mr. Hamilton gave the child a bath before he left that morning and that she heard the child complain that the water in the bath was too hot. Mr. Hamilton testified that he never gave the child a bath and that the child was not injured when he left for work.
 {¶ 4} According to Mr. Hamilton, the defendant paged him while he was at work at about 1:30 p.m. and said that she was giving the child a bath and that when she wiped the child's face, his skin came off the side of his face. Mr. Hamilton further stated that at about 6:30, the defendant paged him again and told him to come home immediately. The defendant allegedly stated to the defendant that the child fell and split his lip and that "something was wrong" with his hand.
 {¶ 5} Mr. Hamilton testified that he immediately went home and found the defendant crying and saying, "I'm sorry, I didn't do it." Mr. Hamilton said the child's lip was swollen, he had a cut on his face and his hand and he suspected the child's hand was broken the way he was holding it. Mr. Hamilton then realized that his son's hands were burned and the skin on his hands was "sliding off."
The defendant's mother came over to drive the child to the hospital. Mr. Hamilton called Ms. Boldware from the hospital and when she arrived, she allegedly asked Mr. Hamilton what the defendant had done to her son. Mr. Hamilton responded that he had been with his son the whole day. He testified that he did not want to tell Ms. Boldware that the defendant had been with his child that day because he was afraid that Ms. Boldware would not let him see his son again. An argument ensued between Mr. Hamilton and Ms. Boldware at the hospital, and as a result, Mr. Hamilton was escorted out of the building by the police.
 {¶ 6} Mr. Hamilton admitted that he lied to social workers after the incident, saying that he had taken his son to the store on Saturday and the child fell and split his lip. Mr. Hamilton testified that he also gave this statement to the police. He never admitted to the police or social workers, however, that he burned his son's hands.
Detective Bensi testified that he interviewed the defendant days after the incident and that she had stated that Mr. Hamilton gave the child a bath before going to work. She heard the child indicate that the water in the bath was too hot, but stated that the child did not cry or otherwise indicate that he was in pain. She stated that Mr. Hamilton then went to work. She did not notice any injuries to the child. The defendant told police that she then took the child outside to the playground, that he had fallen and cut his lip. They then proceeded to a nearby store and thereafter returned home, where they remained for the remainder of the day, without incident. The defendant also stated to the police that later in the day that the child had `pooped' and that he had taken his excrement and smeared it upon his head and body. She stated that she put him in the bathtub to clean him up, but did not run the water in the tub. She stated to police that she used the water from the sink with a wash cloth to clean him up. At that point, she noticed that the skin on the side of his head and his hands was peeling off, and growing concerned, called Mr. Hamilton.
 {¶ 7} The defendant disputed that she told Detective Bensi the facts as recounted by him. At trial, she testified that she never gave the child a bath that day and was not responsible for any injuries to him. She further testified that she did not place the child in the bathtub to wipe him from his mess. She testified that he had, in fact, pooped but that she wiped his bottom in the bedroom and proceeded to the bathroom only to wipe his face because he had been crying.
 {¶ 8} The child sustained second degree burns on his hands. According to the testimony of Dr. Stallion, the injuries more than likely occurred within about six to eight hours of the time they presented themselves. Further, Dr. Stallion testified that the lines of demarcation indicated that the child's hands were purposely dipped into hot water. The doctor testified that he discussed the situation only with the mother, but his notes indicated that "The child's father stated he noticed that his hand was red and swollen after placing [the child] in a bath."
Dr. McDavid testified as an expert and opined that the child's burns were immersion burns, or purposely inflicted injuries. She testified that her opinion was also based on the lines of demarcation on his hands and also that there was no splash effect on the child which would indicate an accident.
 {¶ 9} The defendant sought to introduce testimony from her mother that Mr. Hamilton admitted in the presence of the defendant and her mother that he had caused the injuries to his child. She claimed that the statement was admissible as a prior inconsistent statement. The trial judge excluded the statement.
 {¶ 10} The jury found the defendant guilty on all counts and the trial court sentenced the defendant accordingly. It is from this ruling that the defendant now appeals, asserting four assignments of error for our review.
 {¶ 11} "I. It was prejudicial error to exclude the out of court admissions of Fabian Hamilton Sr. that he caused the child's injury."
In her first assignment of error, the defendant essentially contends that the trial court erred in excluding admissible hearsay evidence. Specifically, she argues that her mother, who was called to the apartment to help with the victim's injuries, should have been able to testify that Hamilton told her that he had caused his son's injuries. The defendant maintains that this testimony should have been admissible as extrinsic evidence of a prior inconsistent statement of a witness, because he had previously testified otherwise. We disagree.
 {¶ 12} With regard to procedure, we note that the admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173. To find an abuse of discretion, we must find that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217.
 {¶ 13} Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is not admissible unless it falls within one of the exceptions enumerated in the rules. One of those exceptions is the admission of extrinsic evidence of a prior inconsistent statement by a witness. Evid.R. 613(B) provides, in relevant part:
 {¶ 14} "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
 {¶ 15} "(1) If a statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded the opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
 {¶ 16} "(2) The subject matter of the statement is one of the following:
 "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness."
 {¶ 17} In this case, the trial court's decision to exclude the hearsay was proper. The defendant has failed to demonstrate that Mr. Hamilton's admission was a "statement" as contemplated by Evid.R. 613(B). Although "statement" is not specifically defined in the rule, it is settled that a "statement" exists where a witness has prepared, signed or adopted a statement, or where there is a continuous, narrative statement made by the witness and recorded verbatim. State v. Moore
(1991), 74 Ohio App.3d 334, 340-341; State v. Henry (1987),37 Ohio App.3d 3, 8; State v. Washington (1978), 56 Ohio App.2d 129,133. In this case, Mr. Hamilton's alleged admission of culpability to the defendant's mother is not a "statement" as contemplated by Evid.R. 613(B) and therefore is inadmissible as a prior inconsistent statement. We therefore overrule this assignment of error.
 {¶ 18} "II. It was prejudicial error to exclude the child's statement contained in a medical report that his father caused the injury."
 {¶ 19} The defendant maintains that the trial court erred when it excluded the child's statement contained in medical report that "daddy did it." We disagree.
 {¶ 20} Evid.R. 807 states, in relevant part:
 "(A) An out-of-court statement made by a child who is under twelve years of age at the time of the trial or hearing describing any sexual act performed by, with, or on the child or describing any act of physical violence directed against the child is not excluded as hearsay under Evid.R. 802 if all of the following apply:
 {¶ 21} "(1) The court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to Evid.R. 803 and 804. The circumstances must establish that the child was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add little to the reliability of the statement. In making its determination of the reliability of the statement, the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement. In making this determination, the court shall not consider whether there is independent proof of the sexual act of physical violence."
Further, a trial court must find that a declarant under the age of twelve was competent pursuant to Evid.R. 601(A) at the time the statement was made in order to admit that statement under Evid.R. 807. State v.Said (1994), 71 Ohio St.3d 473. If a trial court finds incompetence, the out-of-court statement must be excluded under Evid.R. 807. Akron v. Deem
(1999), 135 Ohio App.3d 523; State v. Street (1997), 122 Ohio App.3d 79. This determination is a separate determination from the Evid.R. 807 determinations. State v. Said, supra.; State v. Rogers (Dec. 9, 1993), Cuyahoga App. No. 63979.
 {¶ 22} The Supreme Court of Ohio held in State v. Said, supra:
 {¶ 23} "Competency under Evid.R. 601(A) contemplates several characteristics. See, State v. Frazier (1991), 61 Ohio St.3d 247, 251, certiorari denied (1992), 503 U.S. 941. Those characteristics can be broken down into three elements. First, the individual must have the ability to receive accurate impressions of fact. Second, the individual must be able to accurately recollect those impressions. Third, the individual must be able to relate those impressions truthfully. * * *" 71 Ohio St.3d at 476.
In this case, after a hearing, the trial judge indicated that she doubted the that the child would have an appreciation of truth or falsity when he was two, when the statement was made. The trial judge clearly engaged in a detailed analysis as required by Evid.R. 807 and made the determination that the statement was not reliable and that there was no guarantee of trustworthiness at the time the statement was allegedly made. We therefore find that the trial court did not abuse its discretion in excluding from evidence the child's statement that was allegedly made at the hospital. While the defendant now asserts on appeal that the statement should be admissible as a statement made in the furtherance of medical treatment or diagnosis, we disagree with her contention.
Pursuant to Evid.R.803(4), "Statements for purposes of medical diagnosis or treatment and describing medical history or past or present symptoms, pain, or sensation, or in the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible as an exception to the hearsay rule. Therefore, the relevant inquiry is whether the statements are pertinent to diagnosis or treatment. State v. Chappell (1994),97 Ohio App.3d 515, 531. Accord State v. Jones (Dec. 23, 1999), Cuyahoga App. No. 75390; State v. Miller (1988), 43 Ohio App.3d 44. The child's alleged statement in this case was "daddy did it." This statement in no way aided doctors in the diagnosis of his injuries or in treatment thereafter. According to the testimony of the doctors, it was apparent that the child's injuries were caused by another purposely, as indicated by the lines of demarcation on each of the child's hands and the lack of any splash marks that might indicate an accident. Because this statement was not pertinent to medical diagnosis or treatment, we overrule this assignment of error.
 {¶ 24} "III. The 2 year delay in bringing the charges against the defendant resulted in prejudicial error to the defendant in that she was denied a fair trial."
 {¶ 25} In her third assignment of error, the defendant maintains that she was prejudiced in the delay between the date of the incident and the time which she was brought to trial. Specifically, she alleges that she was unable to obtain witness testimony from a neighbor who allegedly observed the child without injuries while she was caring for him on the day of the incident.
 {¶ 26} An unjustifiable preindictment delay which results in actual prejudice to a defendant is a violation of the defendant's right to due process of law. State v. Luck (1984), 15 Ohio St.3d 150, paragraph two of the syllabus. It is the defendant's burden to establish that 1) the defendant suffered actual prejudice at trial and 2) the preindictment delay was unjustifiable. United States v. Brown (C.A. 6 1992), 959 F.2d 63,65. In order to demonstrate actual prejudice, "there should appear some evidence or facts, independent of defendant's bare assertion, tending to show [the actual prejudice complained of.]" State v. Drake (Jan. 30, 1997), Cuyahoga App. No. 70275, citing United States v. Muniz (E.D.Va. 1988), 690 F. Supp. 482, 486, affirmed (C.A. 4 1989), 875 F.2d 317.
We are first faced with the task of determining whether the defendant demonstrated actual prejudice and find that she did not. The defendant contends on appeal that she was prevented from building a defense because of the state's delay in bringing the charges. She alleges that a neighbor saw the child and her on the day in question that the neighbor would testify that he was unharmed while in her care. The defendant asserts that she did not know the witness' name and therefore was unable to contact her because of the lapse of time. She further alleged that the alleged witness was in poor health and had likely died since the day in question. We first note that the death of a witness alone is insufficient to establish actual prejudice arising from a pre-indictment delay. Muniz, supra. and United States v. Solomon (1982), 688 F.2d 1171. We further note that there exists no other evidence or facts which corroborate the defendant's bare assertion. In her statement to police, just days after the incident and in the presence of her attorney, the defendant did not mention the existence of an alleged witness. Nor did the defendant's testimony allege that the neighbor would have served as a witness in her defense. We cannot find that the defendant demonstrated actual prejudice as a result of the state's delay in bringing the charges against her, and therefore find that the trial court did not err in denying her motion to dismiss.
 {¶ 27} "IV. The cumulative effect of error's [sic] alleged in the assignments of error's [sic] one through three deprived defendant of a fair trial in violation of the VI Amendment to the United States Constitution and Article I, Sec. 10 of the Ohio Constitution."
Having determined that the trial court did not err with regard to assignments of error one and two, and that the error complained of in assignment of error three was harmless, we decline to address this assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., AND JAMES J. SWEENEY, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R.22(B), 22(D) and 26(A); Loc.App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).